THE CENTRAL NATIONAL BANK OF MIDDLETOWN *vs.* ORRIN E. STODDARD.

First Judicial District, Hartford, May Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

No formal presentation and demand is necessary in the case of notes which are owned by the bank where they are payable and which are held by it ready to be delivered up when paid.

In an action by a bank against the indorser of notes payable to it at its banking house, its president testified to their nonpayment and the notes themselves were also introduced in evidence. *Held* that in the absence of any evidence that the maker of the notes was a depositor in the plaintiff bank, the trial court was justified in finding, upon the evidence thus presented by the plaintiff, that the bank did not have in its hands funds of the maker sufficient to pay the notes.

Under the Negotiable Instruments Act (General Statutes, §§ 4259–4276) due notice of the dishonor of a note is deemed to have been given to an indorser when a written notice, duly addressed and stamped, has been deposited in the post-office. In the present case the president of the plaintiff bank testified that he prepared and signed written notices of the nonpayment of the notes on the day they matured, enclosed them in stamped envelopes properly addressed to the defendant, sealed the envelopes and left them in the place where the outgoing daily mail of the bank was customarily left to be taken to the post-office by the bank's messenger in the line of his duty. *Held:*—

1. That this evidence was sufficient to justify the trial court in finding that the statutory requirements respecting notice of dishonor had

been complied with, and that such notices were received by the defendant on the following day; especially in the absence of any denial by him of their receipt, during his testimony in his own behalf.

2. That the failure of the bank to call the mail messenger as a witness did not necessarily impugn or invalidate such finding.

The fact that a letter was deposited in the post-office or in a letter-box may be proved, like any other fact, either by direct or circumstantial evidence.

The failure of a party to testify respecting a material matter within his personal knowledge raises a presumption of fact against him.

The defendant claimed that the plaintiff was estopped by its conduct from collecting the notes of him. *Held* that the finding of the court to the contrary was sustained by the evidence, the statements relied upon as constituting an estoppel being nothing more than a bit of advice to the defendant.

The president of the bank while testifying was allowed to refresh his memory from an inspection of his signature to memoranda on the back of the notes to the effect that the indorsers were duly notified. *Held* that such ruling, being limited to his signature, was proper.

Argued May 5th—decided June 14th, 1910.

ACTION by the payee against one of the indorsers on two promissory notes, brought to and tried by the Superior Court in Middlesex County, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff for $16,000, and appeal by the defendant. *No error.*

The complaint contains two counts. Paragraph 1 of the first count alleges an indebtedness to the plaintiff from the defendant upon the following note, attached to said paragraph as an exhibit:—

"$8,000.00. Middletown, Conn., Sept. 18, 1907.

Three months from date we promise to pay to the order of The Central National Bank, Eight Thousand Dollars at the Central National Bank of Middletown, for value received.

THE STEGMAYER ENAMEL BRICK CO.,
H. C. Holmes, *Prest.*

Due Dec. 18th.

Indorsements on back of same:

H. C. Holmes,

C. B. Leach,

Orrin E. Stoddard.

Indorsers duly notified of nonpayment of this note.

R. C. Markham, *Notary Public.*"

The averments of the second count, and the exhibit attached to it, were in all respects like those of the first, except that the note upon which it counted was dated October 10th, 1907, was for $7,000, had two additional indorsers, and was marked "Due Jan. 10th /8."

The second paragraph of each count alleges that on a named day (stating the day on which the note became due) the note described therein was duly presented at the Central National Bank of Middletown for payment, and was not paid.

The third paragraph of each count alleges that notice was given the defendant by the plaintiff by depositing on a named day (giving the day upon which the note described in that count became due) a notice, a copy of which is annexed to such count. The copy so annexed was as follows: "Please to take notice that a note [describing it] indorsed by you, was this day PROTESTED, for non-payment, after demand and refusal of payment, and that the holder looks to you for the payment thereof.

Yours respectfully,

R. C. Markham, *Notary Public.*"

The answers, after substantially denying all the averments of the complaint, allege that the defendant was an accommodation indorser; that the notes were given under an agreement between the plaintiff and the maker that the time for payment should be extended; that on or about January 15th, 1908, it was so extended by agreement between the plaintiff and the maker; that

the defendant was notified by the plaintiff of such ex-
tension, and that an arrangement had been made by
which the maker of the notes, by its president, Holmes,
would take care of them, and that the plaintiff's pres-
ident requested the defendant to take no action regard-
ing them; and that, relying upon these statements, the
defendant took no action until the property of the maker
of the notes had depreciated and the property of the
prior indorser, Holmes, had been encumbered.

The reply admitted that the defendant was an ac-
commodation indorser, and denied the other affirmative
averments of the answer.

The court found the issues for the plaintiff, and ren-
dered judgment in its favor for $16,000.

*Hadlai A. Hull* and *C. Hadlai Hull*, for the appellant
(defendant).

*William Waldo Hyde* and *Alvan Waldo Hyde*, for the
appellee (plaintiff).

HALL, C. J. The principal questions presented by
the seventy-four reasons of appeal in this case are based
upon the defendant's ninety-four exceptions to the find-
ing of the trial court and its refusal to find certain facts
as requested. These exceptions are, in substance, that
there was not sufficient evidence to support the follow-
ing conclusions of the trial court: first, that the notes
described in the complaint were duly presented for
payment; second, that payment was refused; and third,
that notice of dishonor was given to the defendant
indorser.

Regarding the presentment of the notes for payment,
the trial court has found, in effect, that the notes, on
the days when they became due, were the property
and in the possession of the plaintiff, at its bank, where

they were made payable, ready to be delivered up when paid; and that there was no actual oral or written demand of payment made. The facts regarding such presentment are supported by the evidence, and show a sufficient presentment. As the bank owned the notes, and they were payable at the bank, no formal demand was required. *United States Bank* v. *Smith*, 11 Wheat. (U. S.) 171.

The finding that the notes were not paid is supported by the testimony of R. C. Markham, president of the plaintiff bank, and by the presentation in evidence by the plaintiff of the notes themselves. The plaintiff was not required, in presenting its case, to offer further evidence that the maker of the notes, who was not shown to have been a depositer in the plaintiff's bank, had not, on the day the notes became due, sufficient funds in the plaintiff's bank to pay the notes. In the absence of evidence to the contrary, that presented by the plaintiff was sufficient to justify the finding that the bank had not in its hands sufficient funds of the maker to pay the notes. *United States Bank* v. *Carneal*, 2 Pet. (U. S.) 543, 549.

But evidently the defendant's chief reliance is upon his claim that the evidence fails to support the finding that the defendant was duly notified of the dishonor of the notes.

The finding of the trial court regarding such notice is in substance as follows: Mr. Markham, president of the bank, between the hours of 3 p. m. and 6 p. m. on the days the notes became due, wrote, signed, enclosed in a government stamped envelope, and addressed to the defendant in the city of Middletown, notices of the dishonor of the notes, using therefor blank forms kept by the bank for that purpose, and placed the same with the mail of the bank where such mail was usually kept for forwarding on that day, and which it was the duty

of one Slavin, a clerk of the bank, to deposit in the post-office. These notices were mailed in time to reach the defendant on the following day, and were received by the defendant.

Upon the trial, Mr. Markham, as a witness, having produced the notes in suit and testified that they were duly presented for payment, testified that on the days they became due he filled in, signed as notary public, and addressed to each indorser, and deposited in the office postage prepaid, and mailed to each indorser, the notices of the dishonor of the notes. Among other questions and answers upon the direct examination of this witness were these: "Q. How was it (the notice) signed? A. By R. C. Markham, notary public. Q. How was it sent to each one of these indorsers? A. By mail, postage paid. . . . Q. How was this notice to Mr. Stoddard addressed? A. To the City of Middletown. Q. What name was on it? A. Mr. O. E. Stoddard. Q. You remember what time of day you mailed those? A. Mailed after close of business on the day. . . . Q. What time was it? A. It was after three o'clock. Q. Is that as near as you can get at it? A. Yes. Q. Before what time—Can you tell? A. It went in our usual mail. . . . Q. As to the mailing of the notice as to the first one. What time of day was that mailed? A. In the afternoon. Q. Between what hours? A. Between three and six." The following are questions and answers upon the cross-examination of this witness: "Q. Who mailed the letters of the bank? A. They were mailed by the clerk. Q. Who was the clerk at that time? A. Edward Slavin. Q. Who stamped the letters at that time? A. Our envelopes are stamped by the government. . . . Q. Who took the letters to the post-office? A. The clerk. . . . Q. Who wrote the letters of protest that day? A. I did. . . . Q. Addressed all the envelopes? A. I did.

Q. Did you mail them? A. Put them with our mail. Q. Did you mail them? A. I did not put them in the office. Q. Do you know whether they were put into the office of your own knowledge? A. I don't. . . . Q. You don't know who put the mail, or carried the mail, to the office on either of those days? [the days when the notices were said to have been sent] Q. I do not."

The clerk, Slavin, though still in the employ of the bank, was not called as a witness, and no evidence was offered to show why he was not called as a witness.

The defendant moved for a nonsuit, and the court denied the motion.

The defendant thereafter offered evidence, and the defendant himself testified as a witness, but did not testify whether or not he received the notices of protest.

It appears from the finding, and it is supported by the testimony of the defendant, that at an interview between Markham and the defendant in relation to the notes in suit, about March 1st, 1908, which was after both notes had become due, Markham said to the defendant: "Now, Mr. Stoddard, don't do anything hasty. Go slow. Let us handle this matter. We can handle it very much better than you can, and we are working it to get all there is in it"; and that "the defendant, relying upon this statement of the president of the bank, took no action regarding said notes, and took no steps to recover of Holmes, as a prior indorser of said notes, whatever damages the defendant might suffer as subsequent indorser."

By the provisions of the Negotiable Instruments Act regarding notice of dishonor, due notice to an indorser is deemed to have been given by the sender when it has been duly addressed and deposited in the post-office, or in any branch post-office, or in any letter-box under the control of the post-office department. General Statutes, §§ 4259–4276.

The question is whether the evidence before us justified the trial court in finding that the plaintiff gave the notice required by these statutory provisions. The statute does not provide how it must be proved that the duly-addressed notice, with postage prepaid, was in fact deposited in the post-office or letter-box. It does not require that some person must be able to testify that he himself so deposited it, or that he saw some one else so deposit it. The fact that the notice was deposited in the post-office or letter-box may be proved like other facts, by either direct or circumstantial evidence. It may be proved by the testimony of the person who deposited it, or by proof of facts from which it may be reasonably inferred that it was so deposited. Because the enclosing of such a notice in a stamped envelope, properly addressed, and the depositing of it in the usual place for mail in a bank or place of business, and the fact that it was taken in due time by one whose duty it was to post such mail, do not of themselves, as a matter of law, constitute the notice to an indorser required by statute, it does not follow that these facts would not be proper evidence to show that those notices which the law says are sufficient were in fact given. In other words, it would not follow that it might not properly be inferred from such facts, and especially in the absence of any evidence to the contrary, that the legal notices had been given. *Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473, 478, 34 N. E. 289; *Whitney Wagon Works* v. *Moore*, 61 Vt. 230, 238, 17 Atl. 1007.

Although it appears that Mr. Markham did not know who took the mail from the bank on the days in question, and had no personal knowledge that it was deposited in the post-office or in a letter-box, we think that the trial court, in deciding that the legal notices were in fact given, might properly have concluded, from the evidence presented, that Mr. Markham en-

closed the notices to the defendant in properly ad-
dressed and stamped envelopes, and deposited them in
the usual place in the bank for letters to be mailed, and
that they were taken from that place by one whose duty
it was to post them.

It was further proper for the trial court, in reaching
its final conclusion that the required notices were given,
to consider the fact that when the defendant testified
as a witness—after the court in denying the motion
for a nonsuit had apparently held that prima facie
proof of notice had been presented—he did not deny
having received the notices. Presumably he had knowl-
edge regarding this fact, which he knew affected his
interests to the amount of $15,000, and yet he was
silent when he had the opportunity to speak, and when
it was greatly to his interest to say that he did not
receive the notices, if such was the fact. His testimony
that he did not receive the notices would have been
admissible as tending to prove they were not mailed.
Presumably he was silent because to speak would not
aid his case. *Tetreault* v. *Connecticut Co.*, 81 Conn.
556, 559, 71 Atl. 786; *Wilson* v. *Griswold*, 79 Conn.
18, 22, 63 Atl. 659.

The statement of defendant's counsel during the
trial, that no such notices had been received, could not
properly have been considered by the court as evi-
dence.

The fact found, as above set forth, that in February
or March, after both notes had·become due, the defend-
ant, on account of his conversation with Markham, was
induced to refrain from taking any action against his
prior indorser on these notes, was also proper to be con-
sidered by the trial court in deciding whether the
defendant had received notice of the dishonor of the
notes. The defendant could not have refrained from
taking such action, unless he supposed he could have

taken some action by reason of his own liability as indorser.

It is urged that the plaintiff's evidence of notice was insufficient because Slavin, whose duty it was to post the letters, was not called to testify. The court considered that fact, and spoke of it in denying the motion for a nonsuit. The unexplained failure of the plaintiff to call him as a witness did not necessarily render the plaintiff's proof that the notices were mailed insufficient in law. Very likely Slavin could not have testified that he remembered having taken or posted these particular notices on the days in question. Markham had himself testified that they were mailed: "Went in our usual mail in the afternoon, between three and six"; meaning—as we have said the court might properly have concluded—that they were taken from the bank to be posted at that time.

The evidence presented, in connection with the facts above stated, justified the trial court in finding that the notice, which the statute makes sufficient, was given to the defendant, and the facts found are sufficient to support the judgment rendered.

It is found that there was no agreement for a renewal of these notes or any extension of the time of payment, as alleged in the answer; and this finding is sustained by the evidence.

The statement of Mr. Markham to the defendant, "Now, Mr. Stoddard, don't do anything hasty. . . . Let us handle this matter," etc., made in good faith and without misrepresentation or concealment of the facts, so far as appears, seems to have been nothing more than Mr. Markham's advice to the defendant. It did not estop the plaintiff from pursuing this action. *Clinton* v. *Haddam,* 50 Conn. 84, 86.

It was proper to permit the witness Markham to refresh his memory from the written memoranda on the

backs of the notes, "Indorsers duly notified," etc., and signed "R. C. Markham, Notary Public," made by the witness when the notes fell due. The signatures to the memoranda were alone permitted to be used to refresh the memory of the witness, and the remainder of each of such memoranda was stricken out.

Other rulings complained of upon matters of evidence require no discussion.

The defendant is entitled to no correction of the finding.

There is no error.

In this opinion the other judges concurred.